STATE of Iowa, Plaintiff–Appellee,

v.

Jesse Raymond NEITZEL, Defendant–Appellant.

No. 10–0885.

Court of Appeals of Iowa.

June 15, 2011.

Matthew M. Boles and Magdalena Beme of Parrish, Kruidenier, Dunn, Boles, Gribble, Parrish, Gentry & Fisher, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and John Werden, County Attorney, for appellee.

Heard by VOGEL, P.J., VAITHESWARAN, J., and HUITINK,

S.J.* TABOR, J., takes no part.

VOGEL, P.J.

Following a jury trial, Jesse Neitzel was convicted of second-degree sexual abuse. He appeals and asserts (1) the case should have been transferred to juvenile court; (2) he was not competent to stand trial; (3) inadmissible hearsay evidence was admitted during trial; (4) sufficient evidence does not support his conviction; and (5) his trial counsel was ineffective. We affirm.

## I. Background Facts and Proceedings.

In August 2007, Neitzel was sixteen years old when he sexually abused a seven-year-old child, T.K. In December 2007, Neitzel was charged by trial information with second-degree sexual abuse in violation of Iowa Code section 709.3 (2007).

In January 2008, after pleading not guilty, Neitzel filed a motion to transfer jurisdiction to the juvenile court. The following month, a hearing was held. The State introduced an investigative report completed by a juvenile court officer dated February 7, 2008, along with his testimony recommending Neitzel be prosecuted as an adult. On February 11, 2008, the district court denied Neitzel's motion.

In February 2008, Neitzel filed a notice of the defense of diminished capacity and a motion requesting a competency examination at State expense. On March 5, 2008, the court ordered a competency exam be completed by the doctor recommended by the State, Dr. Sriramamurthy Ravipati. After Dr. Ravipati completed his exam, Neitzel requested a second competency examination at State expense. On December 10, 2008, the district court ordered a second exam be completed at the Iowa Medical and Classification Center at Oakdale.

However, the Center was unable to timely complete the exam and on January 12, 2010, the district court ordered the second competency exam be completed by a doctor of Neitzel's choosing. An exam then performed by Dr. Dan L. Rogers, whose report dated March 3, 2010, was made part of the court file. On March 8, 2010, Neitzel moved to suspend criminal proceedings asserting that he was not competent to stand trial. On March 18, 2010, the district court, after examining both of the reports, denied Neitzel's motion.

A jury trial was held in April 2010. The evidence at trial demonstrated that on a mid-August day in 2007, T.K. was at her father's house when Neitzel was babysitting her and her siblings. Neitzel had babysat for the family many times prior to this day, and had been doing other work around the house in order to purchase a pick-up truck from T.K.'s father. T.K.'s father reported that when he and his wife returned home on this particular day, Neitzel was "acting funny" and T.K. was "being extremely quiet," and T.K. would not talk to him that evening.

T.K.'s mother testified that when T.K. returned to her house and was taking a shower, the mother noticed that T.K. was "red . . . in her genital area." T.K. told her that Neitzel "had touched her genital area . . . with his fingers and [ ] had laid on top of her and stuck his private part . . . into hers." She took T.K. to the local hospital where a physical exam was inconclusive for sexual abuse. An Iowa Department of Human Services (DHS) worker recommended that T.K. be examined further, and T.K.'s mother then took T.K. to Mercy Medical Center in Sioux City for further evaluation.

In her testimony, T.K.'s mother described the ongoing treatment she sought

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2011).

for T.K., who reported the same abuse to three medical treatment or evaluation providers. She also testified that in September 2007, T.K. began displaying behavioral problems and although she was receiving counseling, T.K. was later admitted to the Beloit Treatment Center for nine to ten months.

When the criminal trial was held in April 2010, nearly three years had elapsed since the alleged sexual abuse occurred. T.K., who was then ten years of age, testified at Neitzel's trial. She answered several general questions and stated that she remembered having Neitzel as a babysitter when she stayed at her dad's house. When she was asked if she could tell what happened the last time she saw Neitzel, she paused and then stated, "I don't remember."

Karin Ward is a registered nurse certified as a pediatric sexual assault nurse examiner and employed by Mercy Medical Center. She testified to the type of exam that she performs for diagnosis and treatment purposes when there has been an allegation of inappropriate sexual contact. She testified that she conducted this type of examination on T.K. on August 22, 2007. She described what happened during the examination:

> The next part of every exam that I do is do you know why you're here today? She said no. And then I asked her if she had any ouchies? She stated yes and she pointed to her vaginal area. I then with every kid I ask them if they have a name for that part and she called it her potty....
>
> ....
>
> ... So then I asked her what happened to her potty and she told me that there's this boy, Jesse, he took me up-

stairs, he put me in my bed, he undressed me, he got me on the bed and he laid on me, so then I go into body parts, what body part are you talking about, I asked her what part of his body he used to touch her and she told me his pee pee. I asked her what room that happened in, she stated my room. I asked her what house that happened in, she told me it was her dad's house. I asked her where dad was, and she stated he was at work. I asked her who Jesse was, and she told me that he was babysitting.

> ... I asked her how that felt and she told me that it hurt and I asked her if Jesse said anything to her and she told me he said not to tell anyone.

Ward stated that T.K.'s physical exam was normal, "which is actually more common with sexual abuse."

Amy Scarmon, an interviewer at Mercy Child Advocacy Center, testified that she interviewed T.K. in August 2007. She did not testify to anything T.K. said during the interview, but rather the videotape of her interview was played to the jury. During the videotape interview, T.K. stated that Neitzel took her upstairs to her room, undressed her, laid on her, and touched his "pee pee" on her "private," as well as saying that Neitzel was undressed and his "pee pee" moved up and down inside her "private."

For his defense, Neitzel's mother testified that Neitzel was no longer working for T.K.'s father in August 2007.

The jury found Neitzel guilty as charged. Neitzel then moved for a new trial, asserting that Ward and Scarmon's testimony as well as Scarmon's videotaped interview of T.K. were inadmissible hearsay.[1] On May 19, 2010, the district court

---

1. Neitzel had filed a motion in limine challenging the admissibility of this evidence and objected to the evidence when it was introduced at trial.

found that the complained of evidence was admissible under Iowa Rules of Evidence 5.803(4) and 5.807, and denied his motion for a new trial. Neitzel appeals.

## II. Analysis.

### A. Transfer to Juvenile Court.

■ Neitzel first asserts that his case should have been transferred to the juvenile court. Our review is for an abuse of discretion. *See* Iowa Code § 803.6(3) (providing that some of the same factors are considered whether the transfer is from district court to juvenile court or from juvenile court to district court); *In re J.J.A.*, 580 N.W.2d 731, 740 (Iowa 1998) (explaining that we review a juvenile court's decision on a motion to waive jurisdiction from juvenile to district court for an abuse of discretion).

■ A child age sixteen or older charged with a forcible felony is not subject to the jurisdiction of the juvenile court, but is subject to the jurisdiction of adult court. Iowa Code § 232.8(1)(c). However, upon a motion and for good cause, the court may transfer jurisdiction of the child to the juvenile court in a "reverse waiver." *Id.; State v. Terry*, 569 N.W.2d 364, 366 (Iowa 1997). A court may grant a reverse waiver if it determines "that waiver to the criminal court would be inappropriate under the criteria set forth in section 232.45(6)(c) and (8)." Iowa Code § 803.6(3). Under section 232.45(8), a court is to consider, but is not limited to, the following factors: (1) the nature and circumstances of the act; (2) the child's prior involvement with juvenile authorities and response to past rehabilitation efforts; and (3) the programs and facilities available for rehabilitation and treatment in the adult and juvenile courts. The burden is on the juvenile to show good cause for a reverse waiver. *Terry*, 569 N.W.2d at 366.

Neitzel argues that the district court did not adequately consider the factors enumerated in section 232.45(8) and those factors support a transfer to juvenile court. In its ruling, the district court noted the crime with which Neitzel was charged and the general circumstances of the crime, namely the abuse of a child under the age of twelve; the fact that Neitzel was sixteen years old, had no criminal record, and suffers from dyslexia; and the testimony from a juvenile court officer describing the rehabilitative and treatment programs available in both adult and juvenile court and recommendation Neitzel be prosecuted in adult court. We find the district court adequately considered the appropriate factors.

■ Neitzel also argues the district court considered improper evidence— Chief Deputy Sheriff Ken Pingrey's testimony that he was aware of another investigation regarding Neitzel's family. That investigation involved Neitzel's sister, who gave birth to a child fathered by Neitzel's brother, and during the investigation, Neitzel's parents denied knowledge of the identity of the father of the baby. The State responds that the district court may consider a broad range of evidence, including evidence regarding a juvenile's family situation. *See* Iowa Code § 232.45(8) (providing that the district court is not limited to considering the enumerated factors, but may consider other factors). Neitzel objected to the testimony arguing that it was not relevant, but the district court overruled the objection, stating "I understand the testimony and I'll give it the appropriate weight in this matter that we're here for today." In its ruling, the district court

---

The motion for a new trial also asserted that Chief Deputy Sergeant Ken Pingrey's testimony was inadmissible hearsay, but this claim is not raised on appeal.

did not reference the testimony of Deputy Pingrey and therefore on this record, does not appear to have given it significant weight. We find the district court considered the appropriate factors and did not abuse its discretion in denying Neitzel's motion to transfer to juvenile court.

### B. Competency to Stand Trial.

■ Neitzel next asserts that he was not competent to stand trial. We review the lower court's decision as to whether the defendant is competent to stand trial de novo. *State v. Johnson*, 784 N.W.2d 192, 194 (Iowa 2010); *State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). Our supreme court recently set forth the principles that govern a defendant's claim he is not competent to stand trial,

At common law, the State could not try a criminal defendant if that person's mental condition was such that he or she lacked the capacity to understand the nature and object of the proceedings, to consult with counsel, and to assist in preparing a defense. The Supreme Court has stated the test to determine if a criminal defendant is competent to stand trial is whether the person has sufficient present ability to consult with [counsel] with a reasonable degree of rational understanding-and whether [the person] has a rational as well as factual understanding of the proceedings. In Iowa, we define the test as whether the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting

effectively in the defense. Iowa Code § 812.3(1). The common thread running through these tests is that a criminal defendant must be able to effectively assist counsel in his or her defense.

We presume a defendant is competent to stand trial. The defendant has the burden of proving his or her incompetency to stand trial by a preponderance of the evidence. If the evidence is in equipoise, the presumption of competency prevails. Moreover, once a court finds a defendant competent to stand trial, the presumption of competency continues unless and until the defendant produces new evidence to the contrary.

*Lyman*, 776 N.W.2d at 873–74 (citations omitted).

■ Neitzel argues that due to his mental deficiencies, he did not appreciate the charges, did not understand the proceedings, and was unable to assist in his own defense.[2] "However, subnormal intelligence is only one factor to be considered in determining whether an accused is competent to stand trial; it will not in itself bar the trial." *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994). Neitzel received two examinations, one by Dr. Ravipati and the other by Dr. Rogers.

Dr. Ravipati's report stated that Neitzel was "compliant, cooperative, and responsive to the interview process." Neitzel reported that he was homeschooled by his mother until he was fifteen, when he began seventh grade in public school and was currently a freshman in high school. He had a history of attention deficit disorder

---

2. In his brief, Neitzel recognizes that it is his burden to prove he is incompetent to stand trial. Yet in his reply brief, he asserts that the burden should be on the State to prove he is competent to stand trial. "We have long held that an issue cannot properly be asserted for the first time in a reply brief." *State v. Walker*, 574 N.W.2d 280, 288 (Iowa 1998). Conse-

quently, we do not consider this argument but note our supreme court has clearly stated the burden is on the defendant to show he is incompetent to stand trial. *See Johnson*, 784 N.W.2d at 194 ("The defendant has the burden of proving his or her incompetency to stand trial by a preponderance of the evidence."); *accord Lyman*, 776 N.W.2d at 873.

and a reading disability, and consequently was in special education classes. As to the criminal charges, Neitzel admitted that he was babysitting a seven-year-old girl, along with other children, in order to earn money for the purchase of a truck from the father of the family, and referred to the allegations of sexual abuse and rape. Neitzel was "extremely worried" and concerned as to what the outcome of the case would be. Dr. Ravipati stated that Neitzel's "stream of mental activity is goal directed, appropriate"; his impulse control is poor and his cognitive function, insight, and judgment were below average for his age; he was not psychotic and denied any suicidal or homicidal ideations.

Dr. Roger's report stated that he discussed the criminal charges with Neitzel, who was only able to state that, "They are accusing me of some type of sexual thing." Yet, on further questioning Neitzel explained that he understood "it [was] alleged that he put his penis against the young girl's genitalia." Dr. Roger stated that the test results demonstrated that Neitzel "is of retarded intellectual abilities." The report further stated,

> He is not antisocial, self-focused, or unempathetic. There is nothing to indicate that he is a pedophile or that he is sexually attracted to prepubescent females over a lengthy period of time. Nor is he impulsive for the sake of excitement or self-gratification. However, he has poor ability to discriminate between situations and this may lead him to make errors of judgment.

> He has very poor memory, reading ability, and reporting skills. This is important for two reasons. First, he would not understand any statement given to him for signature and he would not comprehend the typical Miranda warnings. Such warnings are written at

the 10th grade level or above and he is able to read at only the 2nd grade level.

Second, he is likely to comport himself well in a court setting and he will cooperate with his attorney, but it is highly unlikely that he can report accurately to the attorney, comprehend advice given to him, or actively assist in his defense. He will, in other words, comply but he cannot actively participate. His father is not able to contribute as fully as one would hope.

The examinations demonstrated that Neitzel is below average intelligence and has an IQ of 71. The reports also demonstrated that Neitzel got along well with other children and did not have behavioral problems in school; worked part-time jobs to earn extra money; could not make change or manage a checking account; did not keep up on housework and only cooked simple meals; and had a valid driver's license and operated a motor vehicle.

■ Both reports demonstrated that Neitzel understood the nature of the charges against him. Neitzel was able to place the event that resulted in these charges as occurring on August 16 or 17, and explained it occurred while he was babysitting for a family in order to earn money for the payment of a truck. Although he did not know the name of the charge, he was able to explain that he was being accused of a sex offense, namely that "it [was] alleged that he put his penis against the young girl's genitalia." Neitzel also understood the seriousness of the charge, reporting that he was concerned and worried about the outcome of the case. Dr. Roger's findings relied upon Neitzel's poor memory and reporting skills, but the reports do not indicate that these issues result in the conclusion that Neitzel was legally incompetent to stand trial. *See Lyman,* 776 N.W.2d at 875 ("No person's memory is complete; even under the best

conditions everyone is amnesic to some degree due to the natural loss of memory or the failure to observe."). In considering both the reports, we agree with the district court that Neitzel did not show he had a mental deficiency that prevented him from appreciating the charge, understanding the proceedings, or assisting effectively in his defense. Therefore, we agree with the district court's conclusion that Neitzel was competent to stand trial.

### C. Hearsay Evidence.

█ Neitzel asserts that the district court erred in admitting hearsay evidence. Although we generally review a court's decision to admit or exclude evidence for an abuse of discretion, we review a hearsay claim for correction of errors at law. *State v. Paredes,* 775 N.W.2d 554, 560 (Iowa 2009).

Neitzel argues that Karin Ward and Amy Scarmon's testimony regarding their interviews with T.K., as well as the videotape of Scarmon's interview with T.K., was inadmissible hearsay. In ruling on Neitzel's motion for a new trial, the district court found this evidence was admissible pursuant to Iowa Rules of Evidence 5.803(4) (Statements For Purposes of Medical Diagnosis or Treatment) and 5.807 (Residual Exception) and Iowa Code section 915.38(3).

█ " 'Hearsay' is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801; *State v. Hildreth,* 582 N.W.2d 167, 169 (Iowa 1998). Rule 5.803 provides for exceptions to the hearsay rule where the declarant is available to testify, including

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the

inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Iowa R. Evid. 5.803(4). "The policy underlying this exception is that a statement made while procuring medical services, when the declarant knows that a false statement could result in misdiagnosis, carries special guarantees of credibility." *Hildreth,* 582 N.W.2d at 169. "[S]tatements made to a social worker in connection with diagnosis or treatment of emotional trauma may fall within the purview of rule 803(4) if the social worker is sufficiently qualified by training and experience to provide that diagnosis and treatment." *Id.*

Our supreme court has adopted the Eighth Circuit's two-part test to establish the admissibility of hearsay statements under rule 5.803(4): "[F]irst the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.' " *State v. Tracy,* 482 N.W.2d 675, 681 (Iowa 1992) (quoting *United States v. Renville,* 779 F.2d 430 (8th Cir. 1985)). The court has discussed the test in context of a child abuse victim and explained

that where a child's statements are made during a dialogue with a health care professional and are not prompted by concerns extraneous to the patient's physical or emotional problem, real or perceived, the first prong of the *Renville* test is satisfied.

*Hildreth,* 582 N.W.2d at 170; *see also Tracy,* 482 N.W.2d at 681 (stating the first requirement is normally satisfied "when the record reveals that the examining doctor emphasized to the alleged victim the

importance of truthful responses in providing treatment and the record further indicates that the child's motive in making the statements was consistent with a normal patient/doctor dialogue").

Neitzel essentially argues the first prong is not satisfied, namely that T.K. was not told of the medical purpose of the interviews. Both Ward and Scarmon had extensive training and experience in the field of child sexual abuse—Ward is a registered nurse certified as a Pediatric Sexual Assault Nurse Examiner and Scarmon received her Master's Degree in Counseling and has worked in her position as an interviewer at the Child Advocacy Center for six and one-half years. Ward testified her purpose for conducting the interview and physical exam was diagnosis and treatment. Scarmon testified her purpose of conducting the interview was fact finding to determine what happened to the child, assessment of the safety risk of the child's environment, and assessment of the child's need for further counseling or treatment. Both Ward and Scarmon were qualified to provide diagnosis and treatment options.

Ward explained to T.K. that her "job was to check over her body and to make sure she was healthy and we were going to check private parts." When asked why she was there, T.K. responded that it was for her "ouchie." Ward also discussed with T.K. the difference between the truth and a lie and the importance of telling the truth. Scarmon explained to T.K. that her job was to "talk to kids" about "things that might have bothered, or hurt, or scared them." She also discussed the importance of being truthful.

 Immediately after the abuse occurred, T.K. began exhibiting behavioral problems, stemming from the psychological injuries she suffered. Her condition necessitated treatment. Although T.K. was in counseling, she deteriorated to the point where her counselor recommended inpatient treatment. T.K. was admitted to a hospital for two months and then an inpatient treatment center for approximately nine months. We find that the circumstances surrounding the interviews and examinations demonstrate that T.K.'s statements were made while talking with health care professionals and were prompted by concerns material to T.K.'s physical, as well as emotional condition. *Tracy*, 482 N.W.2d at 681 ("Since child abuse often involves more than physical injury, the physician must be attentive to treating the emotional and psychological injuries which accompany this offense."). The evidence was properly admitted under rule 5.803(4).

 We also find the evidence was admissible pursuant to the residual hearsay exception of Rule 5.807. This rule provides,

A statement not specifically covered by any of the exceptions in rules 5.803 or 5.804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Iowa R. Evid. 5.807. "The requirements for admissibility under the residual exception are five-fold: trustworthiness, materiality, necessity, service of the interests of justice, and notice." *State v. Rojas,* 524 N.W.2d 659, 662–63 (Iowa 1994).

Upon our review of the evidence, we believe the evidence has sufficient circumstantial guarantees of trustworthiness. Both Ward and Scarmon were educated and trained in conducting this type of interview and testified that they questioned the child based upon the child's age and asked non-leading questions. *See id.* at 663 (explaining that open-ended questions asked by the interviewing agent supported circumstantial guarantees of trustworthiness). Their interviews of T.K. occurred shortly after the abuse occurred. *See State v. Weaver,* 554 N.W.2d 240, 248 (Iowa 1996) (explaining the time lapse between the alleged event and the statement may indicate trustworthiness), *overruled on other grounds by State v. Hallum,* 585 N.W.2d 249, 254–55 (Iowa 1998). T.K.'s statements in both interviews were consistent. *See Rojas,* 524 N.W.2d at 663 (explaining it is proper to consider whether the statements have a "ring of veracity"). As for the videotape, Scarmon did not testify to what T.K. said during her interview, but T.K.'s statements were introduced through the playing of the videotape for the jury. This permitted the jury to hear exactly what questions were asked and what T.K. said in response, while viewing T.K.'s demeanor. *See id.* ("[A] videotape is more reliable than many other forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor.").

We believe the other requirements were also met. The materiality requirement is clearly met because Ward's testimony and the videotape contained T.K.'s statements

Neitzel sexually abused her. The admission of the evidence was necessary because T.K. was of a young age when the abuse occurred and unable to testify to the abuse at trial years later, making the close-in-time video recitation from T.K., the most probative evidence of the abuse that occurred. We also find the admission of the evidence serves the interest of justice— "[t]he appropriate showing of reliability and necessity were made, and admitting the evidence advances the goal of truth-seeking expressed in Iowa Rule of Evidence 5.102." *Id.; see also* Iowa R. Evid. 5.102 ("These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."). Finally, Neitzel also received adequate notice of the State's intention to use the videotape.

 Next, Neitzel asserts that T.K.'s mother's testimony was also erroneously admitted. At trial, Neitzel objected to the testimony of T.K.'s mother relating the statements T.K. initially made to her describing the abuse. "[E]rroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively. However, we will not find prejudice if the admitted hearsay is merely cumulative." *Hildreth,* 582 N.W.2d at 170. All of the information contained in T.K.'s mother's testimony was repeated by the medical professionals. *See id.* We find that T.K.'s mother's testimony was merely cumulative and therefore not prejudicial. We need not determine whether this testimony was admissible under rule 5.807.

### D. Sufficiency of the Evidence.

 Neitzel next argues that sufficient evidence does not support his conviction because there was contradictory

evidence. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002). "If a verdict is supported by substantial evidence, we will uphold a finding of guilt. Substantial evidence is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). "The State must prove every fact necessary to constitute the crime with which the defendant is charged. The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *Webb*, 648 N.W.2d at 76. In conducting our review, we consider all the evidence in the record, that which is favorable as well as unfavorable to the verdict, and view the evidence in the light most favorable to the State. *Henderson*, 696 N.W.2d at 7.

 Neitzel does not argue that the State failed to introduce evidence to support an element of the crime, but argues that because there was contradictory evidence his guilt was not proven beyond a reasonable doubt. He points to the fact that T.K. did not testify to the abuse at trial; his mother's testimony claiming that he was not babysitting for T.K.'s family in August 2007; and his sister's testimony claiming T.K. was exposed to sex acts by others. While there was some evidence in Neitzel's defense, the credibility of witnesses is for the factfinder to decide except those rare circumstances where the testimony is absurd, impossible, or self-contradictory. *See State v. Kostman*, 585 N.W.2d 209, 211 (Iowa 1998). T.K. did not testify to the abuse at trial, however she reported the sexual abuse shortly after it happened to two different medical professionals. *See Hildreth*, 582 N.W.2d at 170 ("[A] person should not be able to escape punishment for such a disgusting crime

because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such shocking activity."). The abuse was corroborated by the evidence that she was withdrawn and quiet immediately after the abuse, her mother observed physical symptoms of abuse, and she had resulting behavioral issues necessitating long-term treatment. The jury could have found Neitzel's mother and sister's testimony was not credible as both were directly contradicted by other witnesses. We find sufficient evidence supports Neitzel's convictions.

### E. Ineffective Assistance of Counsel.

 Finally, Neitzel raises three ineffective-assistance-of-counsel claims. We review ineffective-assistance-of-counsel claims de novo. *State v. Stewart*, 691 N.W.2d 747, 750 (Iowa App.2004). In order to succeed on a claim that counsel was ineffective, a defendant must prove by a preponderance of evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). A defendant's inability to prove either element is fatal and therefore, we may resolve the defendant's claim on either prong. *Id.*

 A defendant need not raise an ineffective-assistance-of-counsel-claim on direct appeal in order to preserve the claim for postconviction relief proceedings. *Johnson*, 784 N.W.2d at 197. Although not required, the defendant may raise a claim on direct appeal if he believes the record is adequate to address the claim on direct appeal. *Id.* If the defendant chooses to raise an ineffective-assistance-of-counsel claim on direct appeal, we may either determine the record is adequate and decide the claim or find the record is not adequate and preserve the claim for postconviction proceedings so that the de-

fendant may develop a more complete record. *Id.; see also State v. Fountain,* 786 N.W.2d 260, 263 (Iowa 2010). We find the record is adequate to reach two of the three ineffective-assistance-of-counsel claims raised by Neitzel.

Neitzel first asserts his trial counsel was ineffective for failing to object when Ward testified with the aid of her notes. Under certain circumstances, a witness's recollection may be refreshed by a memorandum or record. *See* Iowa Rs. Evid. 5.612 (explaining that a witness may use a writing to refresh the witness's memory either before or while testifying); 5.803(5) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.").

Neitzel argues the State was required to establish that Ward was unable to testify without having her memory refreshed with her notes *before* the State provided Ward with her notes. *See Lanz v. Pearson,* 475 N.W.2d 601, 605 (Iowa 1991) ("[B]efore plaintiffs could refresh [the witness's] memory, they were required to establish that [the witness] was unable to testify concerning the details of the [event] without first having his memory refreshed."). Neitzel points to the following exchange,

Q. On August 22nd of 2007, did you conduct one of these medical interviews of [T.K.]? A. Yes, I did.

Q. Did you bring your notes of that interview with you? A. Yes.

Q. Would it assist you in your testimony to have your notes to refer to to refresh your recollection? A. Yes.

■ However, on cross-examination Ward testified,

Q. Do you have an independent recollection of the exam or are you simply reviewing your report? A. Reviewing my report.

Q. That's because you don't have an independent recollection of the exam? A. No.

Q. No, that's not why it is, or no, you don't have an independent recollection? A. I do not recall this exam specifically from three years ago, no, I don't.

We need not determine whether counsel should have objected, because Neitzel cannot establish prejudice. It is clear from this testimony that Ward was unable to testify without her notes. Had Neitzel's trial counsel objected, the State would have simply asked the same questions later asked on cross-examination and Ward would have been permitted to testify with her notes. *See* Iowa Rs. Evid. 5.612; 5.803(5). Neitzel cannot establish prejudice and this claim must fail.

■ Neitzel next asserts his trial counsel was ineffective for failing to argue in his motion for a new trial that the verdict was contrary to the weight of the evidence. Under the "weight of the evidence standard," the trial court weighs the evidence and considers credibility as it determines whether "a greater amount of credible evidence supports one side of an issue ... than the other." *State v. Reeves,* 670 N.W.2d 199, 202 (Iowa 2003). While trial courts have wide discretion in deciding motions for a new trial, such discretion must be exercised "carefully and sparingly" to insure the court does not "lessen the

role of the jury as the principal trier of the facts." *State v. Ellis,* 578 N.W.2d 655, 659 (Iowa 1998). The trial court grants a new trial only in the "exceptional case" where "a miscarriage of justice may have resulted." *Reeves,* 670 N.W.2d at 202.

In order to establish prejudice, Neitzel would have to show that had his trial counsel moved for a new trial on this basis, there is a reasonable probability the district court would have granted him a new trial. Our review of the record indicates the greater weight of the evidence supports the jury's verdict, and consequently there is no reasonable probability that the district court would have granted this motion. *State v. Maxwell,* 743 N.W.2d 185, 196 (Iowa 2008) (explaining that prejudice exists where the claimant proves by a reasonable probability that the result of the proceedings would have been different). Neitzel cannot establish prejudice and therefore, his claim must fail.

■ Finally, Neitzel asserts his trial counsel was ineffective for failing to investigate the case prior to trial, adequately prepare for trial, and cross-examine witnesses. He argues that his trial counsel did not take depositions of the State's witnesses until approximately two months before trial and failed to ask the State's witnesses enough questions on cross-examination. Neitzel does not explain how he was prejudiced, what benefit he would have received from taking earlier depositions or even what additional questions he wanted asked on cross-examination. Because Neitzel's claim is general and conclusory in nature, we must preserve it for possible postconviction relief proceedings. *See Johnson,* 784 N.W.2d at 197 (discussing that regardless of our view of the viability of the claim, we must preserve it for postconviction relief proceedings). Having considered all of Neitzel's claims on appeal, we affirm.

**AFFIRMED.**