# IN THE COURT OF APPEALS OF IOWA

No. 18-1492
Filed March 18, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHAD ALLEN BONNER,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Winnebago County, Gregg R. Rosenbladt, Judge.

Chad Bonner appeals from convictions on two counts of second-degree sexual abuse following a bench trial. **AFFIRMED.**

Aaron Hamrock of McCarthy & Hamrock, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Following a bench trial, Chad Bonner was found guilty of two counts of second-degree sexual abuse. He now appeals the convictions, asserting the court erred and abused its discretion in many respects. Bonner also contends his trial counsel rendered ineffective assistance. Upon our review, we determine Bonner's claims of ineffective assistance of counsel should be preserved for possible postconviction-relief proceedings. We affirm in all other respects.

### I. Background Facts and Proceedings.

These facts are essentially undisputed. Bonner and K.F. have two daughters—M.M., born in 1996, and J.F., born in 1999.[1] Over the years, Bonner also had and on-again, off-again relationship with C.K. Bonner and C.K. have one daughter, M.K., born in 2001. C.K. has two other daughters, S.J., born in 1998, and A.G., born in 2004.

Bonner, C.K., S.J., M.K., and A.G. lived together for a time in the 2000s. During that time, Bonner had visitation with his daughters M.M. and J.F. every other weekend at his home with C.K. and the other children. M.M. often threw fits before her visits with Bonner, but K.F. made her go.

Bonner and C.K.'s relationship ended in 2008 after S.J. told C.K. Bonner had sexually abused her. Before that time, C.K. had no suspicions that abuse was occurring in the home. She had witnessed no abuse, nor was she made aware that anything improper or abusive had occurred in the home.

---

[1] Bonner consented to the termination of his parental rights to J.F. when the child was two, and J.F. was adopted by her step-father. But because M.M. continued to have visits with Bonner, J.F. participated in the visits too, going with M.M. to Bonner's home.

Bonner's daughters, M.M. and J.F., were each interviewed in 2008 by the Iowa Department of Human Services (DHS). Both girls denied Bonner had touched them in any sexual way. M.M. and J.F. ceased having visits with Bonner after S.J.'s report.

Though K.F.'s and C.K.'s children had grown up seeing each other fairly often, they did not stay in contact after 2008. In or around 2016, the children came in contact through social media, and J.F. discovered her half-sister M.K. was going to live with Bonner. J.F. told M.M.

M.M. was nervous about M.K. living with Bonner because she did not "want her to get hurt." M.M. told M.K. that Bonner had sexually abused her, as well as the things S.J. said Bonner did to S.J. M.K. seemed unconcerned and ultimately did move in with Bonner. M.M., who had told her mother about Bonner's abuse in 2014, talked to her mother about M.K. Both M.M. and her mother questioned whether M.K., a minor, could live with Bonner, and they made inquiries of the situation to county officials. Though M.M. did not report the abuse to law enforcement officials, an investigation began.

M.M. and J.F. were interviewed again. Each told officers that Bonner had sexually abused them in the past and they lied in 2008 when they stated otherwise.

In 2017, Bonner was charged by trial information with two counts of second-degree sexual abuse.[2] The charges stemmed from reports that Bonner had committed a sex act on two children under twelve between January 2005 and September 2008. After a February 2018 bench trial, the district court entered its

---

[2] A third count was charged in the trial information but was later dismissed by the State.

findings of fact, conclusions of law, and verdict finding Bonner guilty beyond a reasonable doubt on both counts.

Bonner moved for a new trial and in arrest of judgment challenging the sufficiency of the evidence to support the convictions, among other things. The State resisted. Bonner then filed an affidavit sworn by his daughter M.K. affirming:

> I spoke with [J.F.] within 2 or 3 days of her testifying . . . . She had called me on the phone and was talking about the trial. When she began talking about her testimony, I asked her "was it the truth?" and she said "not all of it". I then asked her what part wasn't true; she didn't answer me and hung up the phone. I have not seen her or talked to her since then.

A handwritten line follows: "I saw her yesterday and she treatend [sic] me to not say anything."

Following a hearing, the district court denied Bonner's motion. He was sentenced to life in prison. Bonner appeals.

## II. Discussion.

On appeal, Bonner asserts several claims: (1) there was insufficient evidence to support his convictions, (2) newly discovered evidence in M.K.'s post-verdict affidavit entitled him to a new trial or another hearing,[3] (3) a report by J.F.

---

[3] Bonner did not ask the district court to vacate the judgment and reopen the record to take additional testimony in his motion for new trial. At the hearing on the motion for new trial, Bonner's counsel acknowledged that vacating the judgment and reopening the record to take additional testimony was an option available to the court, see Iowa R. Crim. P. 2.24(2)(c), but "lean[ed] towards a new trial," and that a new trial "would be the option that I would urge the court to adopt, to start over and do this correctly and without further testimony." Bonner's contention that the trial court abused its discretion in not vacating the judgment and taking additional testimony pursuant to rule 2.24(2)(c) is not preserved for appellate review. See State v. Rutledge, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court.").

of a sexual nature should not have been excluded at trial, and (4) trial counsel was ineffective "in failing to present defense witnesses." We address Bonner's arguments in turn.

### A. *Substantial Evidence.*

We first turn to Bonner's assertion that the district court erred in finding the State presented sufficient evidence to support the convictions. "We review sufficiency-of-the-evidence challenges for correction of errors at law." *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). "In evaluating sufficiency-of-evidence claims, we will uphold a verdict if substantial evidence supports it." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). In making this determination, we do not review just the inculpatory evidence. *See State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016). Instead, all of the record evidence must be considered, "including any reasonable inferences that may be fairly drawn from the evidence." *Id.* at 705 (citation omitted). "'[E]vidence which merely raises suspicion, speculation, or conjecture is insufficient.'" *State v. Hearn*, 797 N.W.2d 577, 580 (Iowa 2011) (quoting *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992)). The finder of fact "is entitled to reject a party's evidence and credit the evidence against it." *Trane*, 934 N.W.2d at 455; *accord State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011) (noting "credibility of witnesses is for the factfinder to decide except those rare circumstances where the testimony is absurd, impossible, or self-contradictory").

A person who performs a sex act with a child under twelve commits second-degree sexual abuse. *See* Iowa Code § 709.3(1)(b) (2005). A "sex act" as defined by section 702.17(1) and (3) includes "any sexual contact between two or more persons by . . . [p]enetration of the penis into the vagina or anus" or by "[c]ontact between the finger or hand of one person and the genitalia or anus of another person."

Here, there is no direct physical evidence. Bonner's argument centers upon the credibility of M.M. and J.F. Because both M.M. and J.F. denied abuse in 2008, they are either lying now, or they were lying in 2008. Either way, as Bonner's argument goes, they are liars and thus lack credibility. But both M.M. and J.F. admitted under oath at trial that they had lied previously, and they gave reasonable explanations for their dishonesty. In 2008, they were 12 and 9 years old, respectively. M.M. testified she was afraid of her father and of what speaking out would do to her relationships with relatives on Bonner's side of the family. Indeed, both M.M. and J.F. testified Bonner's family has ceased contact with them after coming forward. J.F., who has an intellectual delay, explained she was telling the truth at trial because she now understood what had happened to her back then, that what happened was not right, and what happened was not her fault. And given the passage of time and their young ages at the time of the incidents, any inconsistencies in their trial testimony are minor.

The district court also had distinct advantages in assessing credibility, having observed the parties firsthand and having drawn upon senses unavailable to us on appeal. The court found both daughters:

appeared to be very credible, genuine, and sincere in their testimony. Both M.M. and J.F. testified in open court in the presence of [Bonner], their father, and were cross examined. There were some inconsistencies in the details of the events they described; however, both witnesses were very consistent overall in their descriptions of the sexual contact initiated by their father. Both M.M. and J.F. were appropriately emotional at times during their testimony.

The court also noted Bonner "admitted that he was not always truthful about past incidents." The court was free to believe or disbelieve any testimony as it chose and to give weight to the evidence as in its judgment that evidence should receive.

Viewing the evidence in the light most favorable to the State, we conclude a reasonable juror could find Bonner committed sex acts as defined in section 702.17(1) on J.F. and (3) on M.M. while they were under the age of twelve. Substantial evidence thus supports Bonner's second-degree sexual abuse convictions.

### B. Newly Discovered Evidence.

Bonner also maintains the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence in M.K.'s post-verdict affidavit. The trial court's discretion in granting or denying a motion for new trial is "unusually broad" when the new trial motion is grounded on newly discovered evidence. *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992). Our review of the district court's ruling on a motion for new trial based on newly discovered evidence is for an abuse of discretion. *See State v. Compiano*, 154 N.W.2d 845, 489 (Iowa 1967). We will find an abuse of discretion only if discretion is exercised on grounds clearly untenable or to an extent clearly unreasonable. *See State v. Alberts*, 722 N.W.2d 402, 408 (Iowa 2006). "A district court should grant a motion for a new

trial only in exceptional circumstances." *State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016).

"The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have often said we will not interfere with its ruling unless it is reasonably clear that such discretion was abused." *Id.* "It is important to distinguish between the unavoidable, legitimate claims and those proposed in desperation by a disappointed litigant. From its closer vantage point the presiding trial court has a clearer view of this crucial question, and we generally yield to its determination." *Miles*, 490 N.W.2d at 799.

Here, the district court considered M.K.'s affidavit and Bonner's arguments, but essentially concluded the evidence probably would not have changed the result of the trial. *See Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003) (setting out four factors a defendant must show to obtain relief, including "that the evidence probably would have changed the result of the trial"). The court explained:

> The court observes that the purported statement of J.F. to [M.K.] was not specific in nature and was not under oath. The purported statement was made to an individual who is supportive of [Bonner]. J.F. was subject to cross-examination and was placed under oath during the trial. The court places far greater weight on sworn testimony made by J.F. during trial which was subject to cross-examination in a courtroom setting, as opposed to purported general statements made following the trial.

Upon our review, we cannot say the district court abused its discretion in overruling Bonner's motion for new trial based on newly discovered evidence. The district court's reasoning is sound, and considering the evidence presented at trial, coupled with the district court's credibility findings, the evidence alleged in the

affidavit does not meet the required showing of a probability that it would have changed the result of trial. *See id.* We therefore affirm on this issue.

### C. Exclusion of Past "False" Allegation.

Bonner next argues the district court abused its discretion when it determined evidence presented in an offer of proof was not "a 5.412 issue, per se," and found it was "remote in time and circumstance from the other evidence in the case, not of high relevance, not of high probative value, [a]nd . . . any possible prejudicial effect would outweigh any of those values." Our review of rulings on the admissibility of evidence is for an abuse of the district court's discretion. *See Trane*, 934 N.W.2d at 458.

> Iowa Rule of Evidence 5.412, Iowa's rape shield law, prohibits introduction of reputation or opinion evidence of a complaining witness's other sexual behavior and substantially limits the admission of evidence of specific instances of a complaining witness's other sexual behavior. Its purpose is to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters. As a result, the rule presupposes that much evidence which the accused wishes to place before a jury will be excluded.

*Id.* at 456-57 (cleaned up).

The Iowa Supreme Court has held false allegations of sexual behavior are not per se barred from admissibility by rule 5.412. *See id.* at 457. Rather, to avoid the risk of undermining the rape shield law itself, the court clarified this evidence "may be admitted only through the rule 5.412 exceptions framework, which involves pretrial notice, a written offer of proof, and an in camera hearing," then is still subject to the ordinary evidentiary rules of relevance. *See id.*

Here, the district court questioned whether the evidence sought to be admitted was a "false allegation of sexual behavior." In Bonner's offer of proof,

there was vague testimony J.F. had accused a boy of attempted rape. Bonner summarized the alleged incident as J.F. claiming she was raped when she was only being kissed, and he explained this evidenced her misunderstanding of the nature of sexual activity or a proclivity to overstate reality. But it was unclear that J.F. had accused anyone of rape. It was also unclear that J.F.'s accusations, if made as described, were false. The evidence offered was insubstantial to support the claim J.F. had made a prior false allegation of sexual behavior so it was inadmissible under rule 5.412.

The district court also found the evidence was not relevant. In general, relevant evidence is admissible, while evidence that is not relevant is not admissible. Iowa R. Evid. 5.402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401; *State v. Alberts*, 722 N.W.2d 402, 410 (Iowa 2006). "The test to determine if evidence is relevant is whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [such person] knew of the proffered evidence." *Alberts*, 722 N.W.2d at 410 (internal quotation marks and citation omitted).

The proffered evidence was vague and limited. We do not believe the evidence would have had any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Upon our review of the record, we cannot say the district court's ruling was clearly untenable or to an extent clearly

unreasonable. The district court thus did not abuse its discretion in excluding Bonner's proffered evidence about a past allegation by J.F.

### D. *Ineffective Assistance of Counsel.*

Finally, we address Bonner's argument that his counsel was ineffective in failing to present defense witnesses. Our review of ineffective-assistance-of-counsel claims is de novo. *See Trane*, 934 N.W.2d at 465; *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). We generally preserve such claims for postconviction-relief proceedings where a proper record can be developed. *See State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). By preserving claims of ineffective assistance for postconviction proceedings, "an adequate record of the claim can be developed." *State v. Harrison*, 914 N.W.2d 178, 209 (Iowa 2018). This gives defense counsel a chance to explain the actions taken in the case. *Trane*, 934 N.W.2d at 465. "Normally, cases involving issues of trial strategy and tactical decisions require postconviction proceedings to develop the record adequately." *State v. Hopkins*, 860 N.W.2d 550, 556 (Iowa 2015).

At oral argument, each party's appellate counsel suggested Bonner's ineffective-assistance-of-counsel claims could be addressed here. But upon our de novo review of the record, we determine the record is inadequate and therefore conclude his claims should be preserved for possible postconviction-relief proceedings. This will give defense counsel the ability to discuss the strategy and tactical decisions taken in the case. *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) (explaining "a lawyer is entitled to his[/her] day in court, especially when his[/her] professional reputation is impugned").

***III. Conclusion.***

Viewing the evidence in the light most favorable to the State, we conclude substantial evidence supports Bonner's second-degree sexual abuse convictions. We do not find the district court abused its discretion when it excluded Bonner's proffered evidence or when it overruled Bonner's motion for new trial based on newly discovered evidence. We therefore affirm Bonner's convictions. We do not address his claim of ineffective assistance of counsel in this direct appeal.

**AFFIRMED.**