# IN THE COURT OF APPEALS OF IOWA

No. 19-1067
Filed November 4, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JAKE SKAHILL,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Witting, Judge.

Jake Skahill appeals the district court's entry of judgment following his convictions of second-degree sexual abuse, lascivious acts with a child, enticing a minor, and indecent exposure. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

The State charged Jake Skahill with second-degree sexual abuse, lascivious acts with a child, enticing a minor, and indecent exposure. *See* Iowa Code §§ 709.3(1)(b); 709.8(1)(a); 710.10(1); and 709.9(1) (2018). The district court appointed the child a guardian ad litem. The guardian ad litem participated extensively in the proceedings.

The first trial ended in a mistrial. Following a second trial, the jury found Skahill guilty of all four crimes. The court merged the first two counts and sentenced Skahill to concurrent prison or jail terms totaling no more than twenty-five years.

On appeal, Skahill contends the guardian ad litem exceeded the scope of her statutorily authorized duties, depriving him of due process and a fair trial. In his view, his attorney should have objected to her conduct. Alternatively, Skahill argues that if we find the guardian ad litem's participation statutorily authorized, application of the statute violated due process. Skahill also asserts the district court erred in admitting video recordings of forensic interviews with the child.

## I.     *Guardian Ad Litem's Role*

Iowa Code chapter 915 contains a subchapter on "protections for children and other special victims." Section 915.37(1) entitles children who are "prosecuting witness[es]" in specified crimes, including the crimes charged here, to have their interests "represented by a guardian ad litem at all stages of the proceedings." "The guardian ad litem shall be a practicing attorney and shall be designated by the court after due consideration is given to the desires and needs of the child and the compatibility of the child and the child's interests with the

prospective guardian ad litem." Iowa Code § 915.37(1). The guardian ad litem is to "receive notice of and may attend all depositions, hearings, and trial proceedings to support the child and advocate for the protection of the child." *Id.* The guardian ad litem must also "file reports to the court as required by the court." *Id.* However, the guardian ad litem "shall not be allowed to separately introduce evidence or to directly examine or cross-examine witnesses." *Id.*

Skahill contends the guardian ad litem overstepped her statutory authority by (1) opposing a defense motion to admit certain exhibits, which "had no bearing on the [child's] involvement in the trial"; (2) opposing a defense motion to exclude the videotaped forensic interviews of the child; (3) opposing the defense's request to have the child's step-sister testify; (4) resisting the defense request to recall the child for further questioning; (5) opposing the opinion testimony of the child's step-mother as to the child's truthfulness; (6) cross-examining the child's step-mother during a proffer outside the presence of the jury, notwithstanding the section 915.37 prohibition on "cross-examin[ing] witnesses"; (7) opposing defense counsels' motions to withdraw following the mistrial; (8) resisting a defense attorney's second motion to withdraw and for a continuance; and (9) resisting the defense motion for a new trial. As noted, he also challenges the statute on constitutional grounds. Because the defense did not object to or raise these claimed errors, Skahill raises the issue under an ineffective-assistance-of-counsel rubric.[1]

---

[1] The supreme court recently stated:
> Although the Iowa Code no longer permits claims of ineffective assistance of counsel to be decided on direct appeal, *see* 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)), we

"Ordinarily, we preserve [ineffective-assistance] claims for postconviction-relief proceedings . . . so the defendant's trial counsel can defend against the charge." *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015) (internal citations and quotations omitted). We believe Skahill's attorneys should have an opportunity to weigh in on the guardian ad litem's role and whether, in their view, there was cause to object. This is particularly true where the appellate courts have not addressed the parameters of section 915.37(1) in this context. *Cf. State v. Lopez*, 872 N.W.2d 159, 177 (Iowa 2015) (addressing the definition of "prosecuting witness" and whether section 915.37 authorized a guardian ad litem to give a victim-impact statement on behalf of a two-year-old child); *State Pub. Def. v. Iowa Dist. Ct.*, 644 N.W.2d 354, 357 (Iowa 2002) (addressing payment for counsel and stating "[t]he district court committed no legal error in interpreting section 915.37 to authorize payment for their counsel in accordance with Iowa Code sections 815.10 and .7"). We preserve Skahill's ineffective-assistance-of-counsel claims for a possible postconviction-relief proceeding.

## II.    *Admission of Child's Pretrial Statements*

Five days after the date of the crimes denoted in the trial information, a forensic interviewer conducted a videotaped interview with the child. Almost three-

---

held in *State v. Macke*, that this provision "do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019." 933 N.W.2d 226, 228 (Iowa 2019). Because the judgment and sentence here were entered before July 1, 2019, we are not foreclosed from considering [the defendant's] claim of ineffective assistance.

*State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020). The dispositional order in Skahill's case was filed on June 6, 2019.

and-a-half months later, the forensic interviewer conducted a second recorded interview.

The State filed a motion to determine the admissibility of the recorded interviews. The State "tentatively anticipate[d]" calling the child as a trial witness but expressed concern that "her ability to testify" might "be inhibited by fear, embarrassment, sadness, or other emotional affect." The prosecutor sought a pretrial order declaring the recordings admissible under Iowa Code section 915.38(3).[2] Skahill's attorney initially expressed "no objections" to admission of the recordings as long as the defense could depose the child. Counsel later changed positions, arguing that the recordings were hearsay and, because the child would be testifying at trial, there was "no need for the entirety of the videos to be shown." The district court ruled that the recordings were admissible under the residual hearsay exception to the hearsay rule. *See* Iowa R. Evid. 5.807.

Following the court's ruling, the defense renewed the objection, adding that the interviews "would be a violation of [Skahill's] confrontation clause rights." The court reaffirmed the prior ruling but afforded the defense an opportunity to revisit the issue.

As noted, the first trial ended in a mistrial. All concerned agreed to transfer objections, offers of proof, rulings, and motions to the second trial. During the

---

[2] Iowa Code section 915.38(3) states "the court may . . . admit into evidence the recorded statements of a child . . . describing sexual contact performed with or on the child" if they "substantially comport with [rule 5.807]." Iowa Code § 915.38(3); *see also State v. Barnard*, No. 18-0757, 2019 WL 5792578, at *3 (Iowa Ct. App. Nov. 6, 2019).

second trial, the child testified via closed-circuit television. The defense reiterated objections to admission of her recorded interviews. The district court stood by the prior ruling.

On appeal, Skahill contends the district court erred in admitting the recordings. *See State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020) (setting forth the standard of review).[3] He specifically argues the recordings were hearsay and certain elements of the residual hearsay exception were not satisfied.

Hearsay is "a statement that: (1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Generally, hearsay is not admissible unless it falls within an exception to the hearsay rule. *Veverka*, 938 N.W.2d at 199. The State relied on the residual hearsay exception for admission of the recordings. That exception states:

> [A] hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in rule 5.803 or 5.804 [if]:
> (1) The statement has equivalent guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence which the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.

---

[3] Skahill argues for an abuse-of-discretion standard of review. The supreme court now applies an errors-of-law standard for review of hearsay rulings. *See State v. Hallum*, 585 N.W.2d 249, 253–54 (Iowa 1998), *overruled on other grounds by Hallum v. Iowa*, 527 U.S. 1001, 1001 (1999) ("We have on prior occasions reviewed the admission of hearsay evidence for abuse of discretion. Recently, however, we stated such rulings should be reviewed for correction of errors of law." (citations omitted)).

Iowa R. Evid. 5.807. The Iowa Supreme Court summarized these requirements as "trustworthiness, materiality, necessity, service of the interests of justice, and notice." *State v. Rojas*, 524 N.W.2d 659, 662–63 (Iowa 1994). Skahill challenges the necessity and interest-of-justice requirements.

### A. Necessity

The necessity requirement corresponds to the third element of the residual hearsay exception. *See* Iowa R. Evid. 5.807(3). Our courts have applied the element to affirm the admission of forensic interview recordings. *See Rojas*, 524 N.W.2d at 662–63; *State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011); *State v. Barnard*, No. 18-0757, 2019 WL 5792578, at *4 (Iowa Ct. App. Nov. 6, 2019) (finding admission of a forensic interview was necessary "where the witness was unable to describe the events of her assault and her prior statement was the most probative evidence"); *State v. Heggebo*, No. 17-1194, 2018 WL 6719729, at *5 (Iowa Ct. App. Dec. 19, 2018) (finding admission of a forensic interview tape of a four-year-old child was necessary where the child testified but could not remember details of the abuse); *State v. Olds*, No. 14-0825, 2015 WL 6510298, at *2 (Iowa Ct. App. Oct. 28, 2015) (affirming the admission of forensic interview tapes where, by the time of trial three years after the abuse, the child "was unable to remember anything substantive or any of the allegations she had made"). However, the supreme court recently stressed that our precedent should not be read to permit the "categorical admission . . . of forensic interviews of alleged child sex abuse victims." *Veverka*, 938 N.W.2d at 204. With that admonition in mind, we examine two key opinions, *Rojas*, 524 N.W.2d at 662–63 and *Neitzel*, 801 N.W.2d at 623.

In *Rojas*, a social worker conducted a videotaped interview of a child who alleged that she was sexually abused. 524 N.W.2d at 661. The child testified at trial but recanted her allegations of abuse against the defendant. *Id.* at 662. The supreme court concluded the child's forensic interview constituted "the best direct evidence implicating" the defendant, thereby satisfying the necessity requirement of the residual hearsay exception. *Id.* at 663.

In *Neitzel*, a young child called to testify at trial could not remember details of the abuse alleged to have occurred three years earlier. 801 N.W.2d at 623. concluded a "close-in-time video recitation" constituted "the most probative evidence of the abuse that occurred." *Id.*

Under *Rojas* and *Neitzel*, recantation and loss of memory may form the basis for admission of forensic recordings. The State concedes neither of those circumstances are present here. We turn to the circumstances that are present. *See Veverka*, 938 N.W.2d at 204 ("The admissibility of evidence . . . depends on the unique facts and circumstances of each case.").

The child testified that she fell asleep on Skahill's chest "[i]n the living room, on the chair." When she awoke, "[Skahill] showed [her] his private" meaning his "wienie," and told her to "wiggle it." The child "indicat[ed]" as she said wiggle. She confirmed "[it] was outside of his pants" and she saw "his skin." The child also testified Skahill "touched [her] . . . on [her] privates," meaning "[i]n between [her] legs" and touched her "under [her clothes]." The child confirmed that "she could feel him on [her privates]" and he touched her "before [she] saw his privates." She responded "yeah" when asked if the touch hurt. Skahill told the child "this was [their] secret."

The child's trial testimony closely tracked her statements during the first forensic interview. There, she identified Skahill by his first name and told the interviewer that she fell asleep on Skahill in the living room. She said Skahill touched her "down here" and she pointed toward "her private." She added that "he put his hand in [her] pants and underwear" and "was like touching it . . . touching the inside." It started hurting. She said Skahill "tried making [her] touch his privates." In her words, "he said touch this and wiggle it up and down" and she demonstrated the motion with her hand. She stated he wanted her to wiggle "his wiener," which "was sticking up" because "he took it out." She said "he grabbed my hand and he wanted me to do it." She said others were upstairs at the time. Skahill told her "this is our secret." The child did not heed the warning and told her mother about the abuse because "secrets like that you can't keep."

There is no question the child's "close in time" forensic interview was highly probative on the question of whether Skahill abused her. The real question is whether it was more probative than any other evidence the State could obtain through reasonable efforts. *See* Iowa R. Evid. 5.807(3). While largely matching her trial testimony, the child's statements in the first forensic interview were slightly more detailed and contextualized. *See State v. Green*, No. 04-0339, 2005 WL 1629993, at *2 (Iowa Ct. App. July 13, 2005) (holding "the videotaped interview provided some responses that could not be successfully elicited from [the child] during trial, and served to clarify and place in context other answers"). And, although the video feed at trial allowed the jury to assess the child's demeanor in real time, this court has affirmed the admission of a forensic interview tape where demeanor was a key factor. *See State v. Pantaleon*, No. 15-0129, 2016 WL

740448, at *2 (Iowa Ct. App. Feb. 24, 2016) ("Consistency of the child's statements and the child's demeanor were key in assessing the child's credibility, making the video necessary."). For these reasons, we conclude the State satisfied the necessity prong of the residual hearsay exception with respect to the first forensic interview recording.

The same cannot be said of the second forensic interview recording. That interview took place months after the event, at law enforcement's behest. The child statements were at once broader in scope than her trial testimony and less clear. Specifically, the interviewer questioned the child about more than the event triggering the charges, and the child appeared to morph the events in her responses. We conclude the second forensic interview recording was not necessary. For that reason, the recording was inadmissible under the residual hearsay exception. Accordingly, we need not address the interest-of-justice requirement with respect to that recording.

### B. Interest-of-Justice

"[E]vidence serves the interests of justice where '[t]he appropriate showing of reliability and necessity were made, and admitting the evidence advances the goal of truth-seeking.'" *Veverka*, 938 N.W.2d at 204 (quoting *Rojas*, 524 N.W.2d at 663). The goal of "truth-seeking" was served in the first forensic interview, which documented the child's virtually contemporaneous responses to open-ended questions about possible abuse.

*Pantaleon* presents a similar scenario—the admission of a forensic interview recording where a child testified to abuse at trial. *See* 2016 WL 740448, at *1. There, this court concluded "the other requirements for admitting the video

were satisfied, and, consequently, the interests of justice were served." *Id.* at *2. Finding *Pantaleon* persuasive, we conclude the interests of justice were served by the district court's admission of the first forensic interview recording.

### C. Harmless Error

The State argues any error in the admission of the forensic interview recordings was harmless. Where a non-constitutional error is claimed, the test for determining whether the evidence is prejudicial and requires reversal is: "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that [the person] has suffered a miscarriage of justice?" *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004) (citation omitted). "[A]dmission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established." *State* v. *Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) (alteration in original) (citation omitted). The State can overcome the presumption of prejudice if it establishes that the record contains overwhelming evidence of the defendant's guilt. *State v. Howard*, 825 N.W.2d 32, 42 (Iowa 2012).

The jury was instructed the State would have to prove the following elements of second-degree sexual abuse: "[T]he Defendant performed a sex act with [the child] . . . while [the child] was under the age of 12 years." Sex act was defined as "[c]ontact between the finger or hand of one person and the genitalia or anus of another person." Lascivious acts with a child required proof the "[d]efendant with or without [the child's] consent fondled or touched the pubes or genitals of [the child]" and "did so with the specific intent to arouse or satisfy the sexual desires of the [d]efendant or [the child]," the child being "under the age of

14 years" and the defendant being "over the age of 18 years." With respect to enticing a minor, the jury was instructed the State would have to prove "the [d]efendant enticed or attempted to entice [the child]," that he "did so with the intent to commit sexual abuse or sexual exploitation upon [the child]," he "committed an overt act evidencing his purpose to entice [the child]" and "[a]t the time alleged, [the child] was a minor under the age of 13." Indecent exposure required proof "the [d]efendant exposed his genitals . . . to [the child] . . . with the specific intent to arouse or satisfy the sexual desire of the [d]efendant or [the child];" the child "was offended by the [d]efendant's conduct" and "[t]he [d]efendant knew or reasonably should have known that the act was offensive to [the child]."

As discussed, the child testified Skahill touched her privates beneath her clothes. The child's mother corroborated her testimony, stating the child told her "she was getting touched by [Skahill] . . . that he was touching her insides." The child's testimony that Skahill removed his penis from his pants and tried to make her touch his penis was also corroborated by her mother, who testified the child told her Skahill "wanted her to put her hand on it." The child additionally testified Skahill told the child to keep the episode a secret, an assertion that placed her in fear that "he was going to hurt [her] if [she] told anyone." She avoided Skahill after the episode.

A physician employed by a child protective center examined the child shortly after the event and prepared a report documenting the child's assertion that Skahill "touched her with his hand on her private." The physician testified that the child reported redness or soreness in her private area when Skahill touched her. Although the physician stated the seven-year-old child "had a normal examination,"

with "no evidence of any injuries . . . that day," she acknowledged documentation of an injury when the child was seen in the emergency department a day earlier. Specifically, the emergency department reported a "[s]hort linear mucosal wound inferior and to the left of the urethral opening." The child protective center physician testified it was "not uncommon" for an injury in the genital area to have healed by the time she examined a child.

A nurse who treated the child similarly reported that the child told her Skahill "touched" her and "tried making [her] touch his privates."

We conclude the evidence supporting the findings of guilt was overwhelming. Accordingly, even if the admission of the forensic interview recordings was erroneous, the admission amounted to harmless error. In light of our conclusion, we need not address the State's alternative argument that the recordings were admissible under the medical-diagnosis-and-treatment exception to the hearsay rule.

We affirm Skahill's judgment and sentence.

**AFFIRMED.**