# IN THE COURT OF APPEALS OF IOWA

No. 22-1952
Filed June 19, 2024

**IN RE DETENTION OF AUSTIN SIMS,**

**AUSTIN MICHAEL SIMS,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County,
Richard D. Stochl, Judge.

Austin Sims appeals the trial court's finding he committed sexual abuse,
which supported his sexual violent predator determination and civil commitment.
**AFFIRMED.**

Jill Eimermann, Assistant Public Defender, Special Defense Unit, for
appellant.

Nathaniel Schwickerath, New Hampton, guardian ad litem for appellant.

Brenna Bird, Attorney General, and Linda J. Hines and Keisha F.
Cretsinger, Assistant Attorneys General, for appellee State.

Considered by Tabor, P.J., Badding, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**BLANE, Senior Judge.**

Austin Sims appeals the district court finding in a Chapter 229A (2019) civil commitment proceeding that he committed second-degree sexual abuse against his younger brother, J.S., and cousin, S.N., which supported his sexual violent predator (SVP) determination and commitment. Sims argues that there was insufficient evidence to support the court's finding, and the court erred in four evidentiary rulings that admitted evidence of his sexual conduct. We first examine the evidentiary issues and determine the admissibility of that evidence and its potential impact on our determination of the sufficiency-of-evidence claim.

**I.     Background facts and proceedings.**

On March 5, 2018, a teacher saw nine-year-old J.S. place his penis in a drinking fountain in the hallway at school. That teacher informed J.S.'s teacher, Kristie Hrdlicka, and the school principal, Kurt Volker, about what he saw.[1] Volker and Hrdlicka then took J.S. into Hrdlicka's empty classroom and discussed with him what had occurred at the drinking fountain.

Based on that discussion with J.S., Hrdlicka, and Volker determined that they should confer with the school nurse and, as mandatory reporters, inform the department of health and human services of suspected sexual abuse of J.S. and his cousin, seven-year old S.N., by J.S.'s older brother, Sims.

Four days after the drinking fountain incident at school, Katie Strub, a child protection center (CPC) forensic interviewer, interviewed J.S. and S.N. The interviews were video recorded. J.S. stated that Sims touched his "peepee" with

---

[1] Hrdlicka was J.S.'s special education teacher for almost three years. Although J.S. has speech difficulties, she was able to understand him.

Sims's mouth and "kissed" his "butt and peepee." S.N. also disclosed that Sims "touched" him with his hands on his "privates" over his clothes.

Based upon the child protective services investigation, the county attorney filed a delinquency petition charging Sims with two counts of sexual abuse in the second degree of J.S. and S.N. The court ordered a competency examination for Sims and he was found to be incompetent and not able to be restored to competency.[2] Based on the competency report, the delinquency petition was stayed. Instead the State filed a petition to have Sims determined to be a sexually violent predator under Iowa Code chapter 229A (2019).

The district court scheduled a hearing to determine, under Iowa Code section 229A.7(1), whether Sims had committed sexually violent offenses. Before the hearing, the State filed a notice of intent to use recorded statement under Iowa Rule of Evidence 5.807 and Iowa Code section 915.38,[3] referring to the CPC videos of J.S. and S.N.'s recorded interviews. Sims resisted.

---

[2] Sims was born with a birth defect, Agenisis of the corpus collosum (ACC), resulting in a diagnosis of chronic static encephalopathy, moderate intellectual development disorder, assessed IQ between 49 and 57, and an academic level equal to second grade.

[3] Iowa Code section 915.38(3) provides:

> The court may upon motion of a party admit into evidence the recorded statements of a child, as defined in section 702.5, describing sexual contact performed with or on the child, not otherwise admissible in evidence by statute or court rule if the court determines that the recorded statements substantially comport with the requirements for admission under rule of evidence 5.803(24) or 5.804(b)(5) [now combined as rule 5.807].

Since the statute requires compliance with Iowa Rule of Evidence 5.807, we need only examine the rule of evidence in determining admissibility under the residual exception.

At the hearing, the State called Hrdlicka and Volker as witnesses. Hrdlicka was asked what J.S. had told them at the March 5 meeting in the classroom. Sims lodged a hearsay objection. The State responded that the testimony was offered to explain Hrdlicka's further conduct and was also admissible under the residual hearsay exception, and requested the court take the evidence subject to the objection. The court then ruled: "All right. I will take it and consider the objection at a later time."

Following that record, Hrdlicka testified that when she talked to J.S. on March 5, J.S. avoided what occurred at the drinking fountain, changed the subject, and started talking about the new clothes he was wearing. J.S. continued that he had been at his cousin's house the previous weekend for a birthday party and was in a room with C.N., S.N., and Sims, and that Sims touched and rubbed J.S.'s penis. J.S. pointed down to his genital area and added that Sims had touched and kissed his butt and then put J.S.'s penis in his mouth. He also said that Sims put his penis in J.S.'s mouth and almost peed. When Hrdlicka asked if anyone else was in the room at the time, J.S. said S.N. was, and that Sims did the same thing to S.N. Hrdlicka recalled that at the time J.S. was in the second grade, having been held back several years.

Volker also testified about the discussion he and Hrdlicka had with J.S. on March 5. Sims did not lodge an objection to Volker's testimony, which was substantially the same as Hrdlicka as to what J.S. told them. One variance was that Volker recalled asking J.S. directly, "Did [Sims] suck your penis?" J.S. responded affirmatively and disclosed the remaining information afterward.

Both J.S. (by then twelve years old) and S.N. (by then eleven years old) testified at the hearing. Both children denied any sexual contact with Sims occurred and did not remember the CPC interviews. But the district court made the following finding concerning J.S.'s testimony:

> Despite their previous disclosures, both [J.S.] and [S.N.] denied that any instances of sexual abuse had taken place. [J.S.'s] mother, sister and grandmother were in the courtroom and he was making eye contact with them throughout his testimony. His testimony lacked any veracity and appeared coached. He denied ever making any statements that [Sims] had abused him and denied participating in a [CPC] interview.

S.N. recalled Sims being at their house for a birthday party. Sims had slapped him on the butt and nothing else. When asked about his CPC interview, he remembered an officer gave him a ride to talk to a lady, but he could not recall what he talked to the lady about.

The State laid foundation with Strub regarding the forensic interviews she had conducted with J.S. and S.N. at the CPC and offered the two videos into evidence. Sims's counsel objected "that [the exhibits] do[] not meet the requirements of trustworthiness and furthering the interest of justice to qualify as residual hearsay."

The trial court then advised:

> THE COURT: The court has not had an opportunity to review the interviews; however, can I assume, [Assistant Attorney General], that the alleged victims' testimony contradicts what they testified to here in court?
> ASSISTANT ATTORNEY GENERAL: That is true, Your Honor.
> THE COURT: All right. Initially for the purpose of the admission of those interviews, the court finds that the interviews are not hearsay under [rule] 508.1 as they are prior inconsistent statements made by a witness under a recorded interview and, therefore, by definition it is not hearsay. So the tapes will come in

for that purpose, but the court will have to review the tapes before making a determination whether they meet the criteria of a residual hearsay exception. I can't rule on that without knowing the contents of the testimony and whether that testimony is sufficiently compelling in order to override the hearsay rule. Does that make sense?

The video interviews contained statements by J.S. that were substantially similar to what he had told Hrdlicka and Volker on March 5, 2018.

The court filed its ruling, finding:

The court admitted the video tape interview of the [CPC] interview as a prior inconsistent statement. The first test in determining whether a statement is admissible as a prior inconsistent statement is whether a proper foundation has been laid for its admission. The foundation alerts the witness as to the occasion of the prior statement and gives the witness an opportunity to admit or deny making the statement. If the witness admits making the statement, then the statement is not admissible; but if he or she denies making the prior statement or cannot remember making it, then the statement may be admitted *for purposes of impeachment.*
　　The court further finds the [CPC] interview is admissible under Iowa Rule of Evidence 807, the residual clause of the hearsay rule. . . .
　　　　. . . .
　　The court finds [J.S.] and [S.N.'s] statements during the [CPC] interview are supported by sufficient guarantees of trustworthiness. There is no indication either child was coached into leveling accusations of sexual abuse against their brother and cousin or that they had any motive to falsely accuse him. The court finds their testimony during trial was completely impeached by the recorded statements especially considering [J.S.'s] statement that his grandmother had instructed him not to talk about what had happened. Their statements to the [CPC] interviewer were far more probative than their testimony during the trial.

(Emphasis added) (internal citations omitted).

After weighing the evidence, the court reached the following conclusions:

As in most sex abuse cases, whether [Sims] has committed sexually violent offenses comes down to this court's evaluation of the credibility of the complaining witnesses. [J.S.'s] statements to school personnel and to the CDC interviewer were believable and compelling as were [S.N.'s] accounts of the incidents. Their testimony at trial was clearly coached and disregarded by the court.

> There is no evidence that the boys have any motive to fabricate their earlier claims and were mostly consistent in their memory of the events.
>
> The court finds beyond a reasonable doubt that [Sims] performed sex acts on his brother [J.S.] and his cousin [S.N.] He caused there to be contact between his genitals and [their] mouths and place[d] his mouth on their genitals. He performed those acts when both boys were under the age of 12. [Sims] committed Sexual Abuse in the Second Degree in violation of Iowa Code Section 709.3, a sexually violent offense.

The court's ruling did not decide whether Hrdlicka's or Volker's testimony regarding J.S.'s statements to them on March 5 were admissible to show further course of conduct or under the residual hearsay exception. Sims appeals.

## II.     Standard of Review.

We review hearsay rulings for correction of errors at law. *State v. Flores*, 2 N.W.3d 287, 292 (Iowa 2024). Improperly admitted hearsay constitutes grounds for reversal unless the proffering party establishes the error was not prejudicial. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). We also review sufficiency-of-the-evidence challenges to SVP decisions for errors at law. *See In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006).

## III.     Discussion.

### A.  Admissibility of CPC interviews

Sims argues that the CPC video recorded interviews of J.S. and S.N. were improperly admitted over his hearsay objection. Hearsay is "a statement that . . . [t]he declarant does not make while testifying at the current trial or hearing [that] . . . [a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Hearsay is inadmissible, subject to limited exceptions. *See State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). "When the

preliminary question is one of fact, 'we give deference to the district court's factual findings and uphold such findings if they are supported by substantial evidence.'" *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020) (citation omitted). "The admissibility of evidence under the exception depends on the unique facts and circumstances of each case." *Id.* at 204. "[A] district court has no discretion to deny the admission of hearsay if the statement falls within an enumerated exception, subject, of course, to the rule of relevance under rule 5.403." *Id.* at 202 (alteration in original) (citation omitted). "Conversely, a district court 'has no discretion to admit hearsay in the absence of a provision providing for it.'" *Id.* at 202 (citation omitted).

The district court found the videos were admissible both as prior inconsistent statements and under the residual hearsay exception. We start with the latter.

The residual hearsay exception provides:

[A] hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in rule 5.803 or 5.804 [if]:
　　(1) The statement has equivalent circumstantial guarantees of trustworthiness;
　　(2) It is offered as evidence of a material fact;
　　(3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
　　(4) Admitting it will best serve the purposes of these rules and the interests of justice.

Iowa R. Evid. 5.807(a).

This exception is "often used . . . to admit the out-of-court statements of child sex abuse victims." [*State v. *]*Skahill*, 966 N.W.2d [1, ]11 [(Iowa 2021)]. But, as our supreme court cautioned in *Skahill*, it is a narrow exception that should be used only sparingly so that it does not "swallow the rule against hearsay." *Id.* at 10. The five

requirements of the exception—"trustworthiness, materiality, necessity, service of the interests of justice, and notice"—"are designed to limit the exception and protect the overarching rule against hearsay." *Id.* at 10–11 (citation omitted). Notably, "[t]hese are not factors to be weighed; all five requirements must be satisfied." *Id.* at 10.

*State v. Maldonado*, 993 N.W.2d 379, 384–85 (Iowa Ct. App. 2023) (first and last alternations in original).

The district court found the statements were "supported by sufficient guarantees of trustworthiness" as there was "no indication either child was coached" during those interviews. The court found no "motive to falsely accuse" Sims in the CPC interviews. And it found the boys' interviews were "far more probative than their testimony during the trial."

Sims challenges the decision based on the trustworthiness, necessity, and interests-of-justice factors. He also points out the residual exception to the hearsay rule should be used sparingly and in exceptional circumstances in regard to recorded CPC interviews. *Veverka*, 938 N.W.2d at 204. We review each factor.

*Trustworthiness.*

In *State v. Weaver* our supreme court set forth the following factors to review in determining trustworthiness in admitting hearsay under the residual exception.

1. The witnesses reporting the statement are very credible.
2. The declarant [] is available to testify.
3. The statement was made shortly after the incident in close proximity to events the declarant could be expected to remember.
4. The declarant had firsthand knowledge of the substance of the statement and was not relying on potentially erroneous secondary information.
5. The statement was unambiguous and explicit that the event occurred.

6. The statement was in response to an open-ended question, and was not the result of interrogation or investigation by the accused or others on her behalf.
7. The statement was made to more than one person, who agree on the substance of what was said.
8. A similar account of the episode of trauma was made on other separate occasions.
9. The statement is corroborated by objective medical evidence showing a contusion on the left occiput which has not been otherwise explained.

554 N.W.2d 240, 248 (Iowa 1996). "In evaluating trustworthiness, we may consider both the trustworthiness of the declarant and the credibility of the witness reporting the statement." *State v. Harrison*, No. 21-0784, 2023 WL 4105468, at *4 (Iowa Ct. App. Apr. 12, 2023). Sims concedes the qualifications and credibility of Strub, the CPC interviewer, as the witness reporting the statements.[4] But Sims contends J.S. and S.N. as declarants were not credible and do not satisfy the trustworthiness prong of the analysis. "With respect to trustworthiness, the relevant consideration is whether the proffered evidence has 'circumstantial guarantees of trustworthiness.'" *Veverka*, 938 N.W.2d at 203 (quoting Iowa R. Evid. 5.807(a)(1)).

In *Veverka*, our supreme court pointed to two prior decisions, one supreme court case, *State v. Rojas*, 524 N.W.2d 659, 662–63 (Iowa 1994), and one court of appeals, *State v. Nietzel*, 801 N.W.2d 612 (Iowa Ct. App. 2011), and identified several indicia of trustworthiness in a video of a child sex abuse interview:

"[t]he interviewer asked [the child] open-ended, non-leading questions"; the questions "were not the kind that would prompt a child to fabricate the responses"; the child provided "a fairly detailed

---

[4] Since the statements were video recorded, the credibility of Strub in reporting those statements is of little importance. More so is the manner in which the interview was conducted. Here, Sims concedes Strub was well qualified and conducted the interviews appropriately.

account of the abuse itself"; the child remembered other details regarding the circumstances; the descriptions of the sex acts were "beyond the experience of the average ten-year-old"; the child's "statements were consistent throughout the interview"; and "the videotape [was] more reliable than many other forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor."

938 N.W.2d at 203 (alterations in original) (quoting *Rojas*, 524 N.W.2d at 663). As

to *Neitzel*, the supreme court wrote:

The court of appeals has also considered the issue. In *Neitzel*, the court of appeals held the district court did not err in admitting a videotaped interview of a seven-year-old sex abuse victim. 801 N.W.2d at 623. In that case, the interview was conducted by an experienced forensic interviewer at a child advocacy center. *See id.* at 622. . . . In concluding the video was admissible, the court of appeals found the interview had sufficient circumstantial guarantees of trustworthiness. *See id.* at 623. In particular, the court of appeals noted the interviewer was "educated and trained in conducting this type of interview," the interviewer "asked non-leading questions," the interview "occurred shortly after the abuse occurred," and the victim's statements were consistent. *Id.* As in *Rojas*, the court of appeals also noted playing the videotape for the jury allowed the jury to view the interview and draw its own conclusions. *See id.* ("As for the videotape, [the interviewer] did not testify to what [the child] said during her interview, but [the child]'s statements were introduced through the playing of the videotape for the jury. This permitted the jury to hear exactly what questions were asked and what [the child] said in response, while viewing [the child]'s demeanor.").[5]

*Id.* at 203–04; *accord State v. Garcia*, No. 20-0227, 2021 WL 210744, at *2–3

(Iowa Ct. App. Jan. 21, 2021).

Sims argues that even though the trial court found J.S. and S.N. competent

to testify, the court finding their trial testimony "unbelievable" weighs against the

trustworthiness of their recorded interviews.[6] However, the district court explained

---

[5] Here, we can substitute the trial judge as the trier of fact for the jury.
[6] In his brief, Sims relies on only five of the criteria set out in *State v. Weaver* for determining trustworthiness in the admission of the recorded forensic videos as

why it found their trial testimony was not credible. As to both boys, the court found it appeared they had been "clearly coached" to not implicate Sims, and S.N. had poor recollection of the events four years earlier.

Next, Sims points out that during the interview with Hrdlicka and Volker, J.S. denied the water fountain incident as reflecting on his lack of truthfulness. This is not precise. Hrdlicka testified J.S. avoided a response and changed the subject. Sims also speculates that J.S. and S.N. may have been coached during the four days between the school incident and their recorded interviews, making the interviews untrustworthy. But we find the speculation unsupported in the record. Also, in the past we have found on a number of occasions that a child's discussion with adults before the recorded interview does not render it untrustworthy. *See, e.g.*, *State v. Juergens*, No. 20-0825, 2021 WL 4592827, at *3 (Iowa Ct. App. Oct. 6, 2021) ("Children must be able to recount instances of abuse to adults for investigations to commence. So we will not find a child's out-of-court statement untrustworthy simply because the child had previously disclosed abuse to other adults."); *Garcia*, 2021 WL 210744, at *1, 2 (finding a CPC interview trustworthy where the child had previously disclosed the abuse to a parent); *State v. Heggebo*, No. 17-1194, 2018 WL 6719729, at *1, 2, 4 (Iowa Ct. App. Dec. 19, 2018) (determining a CPC video was trustworthy where the child had talked to both parents and a nurse about the abuse prior to the CPC interview); *State v. Olds*, No. 14-0825, 2015 WL 6510298, at *1, 8 (Iowa Ct. App. Oct. 28, 2015) (finding a

opposed to the nine criteria discussed above. *Weaver* did not involve admission of recorded forensic interviews, as does *Veverka, Rojas* and *Nietzel*, which we find more controlling.

video of a CPC interview admissible where the child had previously disclosed the abuse to her parent).

By watching the interview on video, "the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *Rojas*, 524 N.W.2d at 663. The interview occurred only days after the events at issue when the children's memories would still be fresh, much fresher than at the trial almost four years later. The interviews were open-ended and non-leading. The children's description of sexual contact was consistent throughout the interviews and with other accounts in the record. This description was also detailed. It has been noted "videotape is more reliable than many other forms of hearsay because the trier of fact [can] observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *Id.* We find the trustworthiness criteria met.

*Necessity.*

The State must show the evidence is "more probative . . . than any other evidence that the proponent can obtain through reasonable efforts." Iowa R. Evid. 5.807(*a*)(3). Recently, the supreme court has reasoned,

> First, in *Rojas*, we allowed the admission of a video interview under the residual exception when a ten-year-old girl recanted her prior accusations during her trial testimony. 524 N.W.2d at 663–64. We decided the necessity requirement was satisfied because "the [video] was the best direct evidence implicating Rojas as [the child's] abuser, it was the most probative evidence linking Rojas to the crime." *Id.* at 663. We did not expound on why the video was the most probative evidence, but the reason is apparent: the direct testimony fell short because the victim had abjured her prior accusation. *See id.* at 662. Another child testified she had seen Rojas "on top of" the victim, but that alone did not establish the sexual abuse of which Rojas had been accused. *Id.* And it was far less probative than a statement describing the sexual abuse coming from the victim. *See id.*

Consequently, the victim's statements in the video interview were a necessity. *See id.* at 663.

*Skahill*, 966 N.W.2d at 12.

As our court analyzed,

Necessity, as it relates to the residual exception, "is not used in the absolute sense." [*Skahill*, 966 N.W.2d] at 11. Instead, "[t]he hearsay evidence only needs to be 'more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts,' as the rule requires." *Id.* (quoting Iowa R. Evid. 5.807(a)(3)). "The word 'probative' means '[t]ending to prove or disprove.'" *Id.* (alteration in original) (citation omitted). Probativeness "is not viewed in a vacuum," and is instead considered "in relation to the other evidence available to the State, particularly [the witness's] live testimony." *Id.*

*Maldonado*, 993 N.W.2d at 385 (all but first alteration in original). Here, both J.S. and S.N. at trial were unable to recall or testify to the sex abuse that occurred four years earlier. The recorded forensic interviews were necessary to present the more probative evidence to the trier of fact.

*Service of the interests of justice.*

"With respect to the finding regarding the interests of justice, evidence serves the interests of justice where '[t]he appropriate showing of reliability and necessity were made, and admitting the evidence advances the goal of truth-seeking expressed in Iowa Rule of Evidence [5.102].'" *Veverka*, 938 N.W.2d at 204 (alterations in original) (quoting *Rojas*, 524 N.W.2d at 663). Finding the State showed sufficient trustworthiness and necessity, we agree the interview also serves the interest of justice. *See Neitzel*, 801 N.W.2d at 622–23 (finding a child's hearsay statements about sexual abuse were admissible under the residual exception after the child could not remember the events at trial); *Garcia*, 2021 WL 210744, at *3.

We have reviewed the trial record and particularly the admitted exhibits—the recorded forensic interviews—and find all of the *Rojas* factors were sufficiently met for their admission. We find no error in admitting the CPC video recorded interviews under the residual hearsay exception. Because we determine that the recorded interviews were admissible under the residual hearsay exception, we need not address Sims's prior inconsistent statement argument.[7]

**B. Admissibility of hearsay statements through school personnel**

Sims next contends the district court erred in allowing Hrdlicka and Volker to testify to what J.S. told them on March 5 following the drinking fountain incident and considered their testimony as substantive evidence without directly ruling on Sims's hearsay objection.[8]

The State resisted Sims's hearsay objection on two grounds—that it showed the teachers' further course of conduct and the residual hearsay exception. The district court at trial and in its findings did not return to the objection to give a ruling.[9] But the court relied on J.S.'s statements for their truth on the ultimate question of whether Sims committed sexual abuse. If admitted only to explain the teachers' further conduct, the court could not use those statements as substantive evidence. *See, e.g.*, *Plain*, 898 N.W.2d at 812 ("An out-of-court

---

[7] We read the State's brief to concede that prior inconsistent statements can only be used for impeachment purposes. The State moves on to say "to the extent the district court considered the CPC interviews as substantive rather than impeaching evidence," the videos were correctly admitted under the residual exception.

[8] Although Sims did not object at the hearing, the State does not challenge his preservation of error on Volker's testimony.

[9] The State contends that Sims was required to file a post-trial motion to amend and enlarge to preserve error. But the supreme court has held that error preservation does not apply to evidentiary rulings. *See DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002).

statement offered only to explain responsive conduct that is relevant to an aspect of the state's case is not offered to prove the truth of the matter asserted and is therefore not hearsay. But 'if the evidence is admitted, the court must limit its scope to that needed to achieve its purpose.'" (internal citation omitted)). Because the court admitted the statements for their truth, we advance to the residual hearsay exception ground.

Sims acknowledges that of the five requirements in Iowa Rule of Evidence 5.807, he was provided notice of the statements and that the statements were material. He limits his argument to one factor—trustworthiness. Sims argues that in March 2018, J.S. was only nine years old, enrolled in special education and had speech difficulties that made communicating with him challenging. He points out that both Hrdlicka and Volker were authority figures to J.S., which likely influenced his responses to their questioning. He also points out that Volker asked J.S. a suggestive and leading question—"Did [Sims] suck your penis?"—which is contrary to how a trained forensic interviewer would conduct an interview, diminishing the trustworthiness of J.S.'s response.

Once again, we would apply the factors set out in *Weaver*, the most troubling of which is the lack of open-endedness in Volker's abrupt and suggesting question of J.S. 554 N.W.2d at 248. But here we determine that admission of J.S.'s statements to school personnel was harmless because J.S. gave more detailed and incriminating evidence of the acts during his CPC interview, which was conducted by a trained forensic interviewer and which we have found was admissible as residual hearsay. So admission of the school personnels' testimony did not prejudice Sims.

**C. Sufficiency of evidence.**

Sims's last contention is that there wasn't substantial evidence that he committed sex acts against J.S. and S.N. *See* Iowa Code 229A.7(1) ("If the person charged with a sexually violent offense has been found incompetent to stand trial and the person is about to be released pursuant to chapter 812, or if a petition has been filed seeking the person's commitment under this chapter, the court shall first hear evidence and determine whether the person did commit the act or acts charged."). "Evidence is substantial if a jury could reasonably infer a fact from the evidence." *In re Detention of Hennings*, 744 N.W.2d 333, 340 (Iowa 2008). The entirety of the evidence presented is considered in a "light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record." *In re Detention of Swanson*, 668 N.W.2d 570, 574 (Iowa 2003) (citation omitted).

To find he committed second-degree sexual abuse, the court had to find Sims "performed sex acts with his brother [J.S.] and/or his cousin [S.N.]" and that "the boys were under the age of [twelve] years." The court defined a sex act as sexual contact including:

> 1. By penetration of the penis into the vagina or anus.
> 2. Between the mouth of one person and the genitals of another.
> 3. Between the genitals of one person and the genitals or anus of another.
> 4. Between the finger or hand of one person and the genitals or anus of another person.

Sims's only dispute on appeal is whether he performed sex acts with J.S. and S.N. The trial court's ruling found Sims "caused there to be contact between [Sims's] genitals and [J.S. and S.N.'s] mouths and placed his mouth on their

genitals." Sims's argument on insubstantial evidence is linked to his assertion that the hearsay testimony of Hrdlicka and Volker as well as the CPC forensic recorded interviews of J.S. and S.N. were impermissibly admitted and relied on by the court in finding Sims committed sex abuse. Without such evidence, the trial court would have only had J.S. and S.N.'s trial testimony, where neither child described acts of sex abuse by Sims. Because we have determined the CPC forensic video recorded interviews were properly admitted under the residual hearsay exception of Iowa Rule of Evidence 5.807, the trial court was entitled to rely on that evidence. We also note that there need only be proof of one "sexually violent offense" to find Sims is a "sexually violent predator" under section 229A.2(15). J.S. told the forensic interviewer that Sims touched his "peepee" with his mouth and that Sims "kissed" his "butt and peepee." The court found this evidence credibly proved what happened and overcame the testimony J.S. gave on the stand that he either could not remember those events or they didn't happen. Given that the incidents and the interview took place four years before trial and that J.S. was both a young child and had developmental and cognitive delays, we find it reasonable for the court to infer that the best evidence of what happened was the interview close in time and conducted by a trained forensic interviewer. Taken in the light most favorable to the State and accepting the court's credibility findings, we find substantial evidence supports the ruling. We thus affirm.

**AFFIRMED.**